## SARAH F. GILLESPIE, Respondent, v. J. C. BEEDY, Appellant.

Kansas City Court of Appeals, April 19, 1909.

PARTNERSHIP: Holding Out: Evidence. The evidence relating to whether defendant was a partner with his codefendants or held himself out as such, is reviewed and held entirely insufficient to establish either one of said issues.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

REVERSED.

*W. W. Calvin* and *J. B. Hamner* for appellant.

(1) The court erred in not sustaining the demurrer to the evidence asked by appellant. Hahlo v. Mayer, 102 Mo. 439; Bissell v. Warde, 129 Mo. 439, 30 Cyc. 394. (2) As Beedy did not hold himself out as a partner, as before pointed out, the only question remaining is whether he was in fact a partner. Lucas v. Cole, 57 Mo. 143; 30 Cyc., 412-13 (and cases there cited); Young v. Smith, 25 Mo. 341; Gates et al. v. Watson, 54 Mo. 591; Kelly v. Gaines, 24 Mo. App. 512; Selby v. McCullough, 26 Mo. App. 66; Gamble v. Grether, 108 Mo. App. 340, 83 S. W. 306. (3) Upon the whole case a question of law, only, was presented; and there were no issuable facts to be submitted to the jury. Gates v. Watson, supra; Bissell v. Warde, supra; Lamwersick v. Boehmer, 77 Mo. App. 136; Gamble v. Grether, supra, 30 Cyc. 385.

*Frank Yeoman* for respondent.

(1) Appellant held himself out as a partner. Selby v. McCullough, 26 Mo. App. 66; Hahlo v. Mayer, 102 Mo. 439; Bissell v. Warde, 129 Mo. 439.

BROADDUS, P. J.—This suit was instituted in a justice's court where it was tried and judgment had, from which an appeal was taken to the circuit court where it was tried anew and plaintiff obtained judgment and defendant Beedy appealed to this court.

The plaintiff sues defendants as copartners. The plaintiff claims that on or about the 15th day of March, 1904, the defendants as such partners employed plaintiff as a mail-carrier on the Star Route Mail Service from Myersville to South Pass City, Wyoming; that they owe plaintiff for service performed for the last fifteen days of March, 1904, in the sum of $116.66 and six per cent interest on the same for two and one-half years; and that they are indebted to her in the further sum of

$79.71, with interest amounting to $11.85, for the full amount of the quarter's pay due one M. M. Gillespie for said mail service, an order for which had been duly assigned to her. The defendant Beedy, before the trial of the cause in the justice's court, filed an affidavit denying the existence of the alleged partnership.

It appears from the testimony that during the year 1903 Hansberger and Crenshaw, defendants, through their agent, E. C. McKinney, secured a contract with the government for the carrying of the mail from South Pass City to Myersville, Wyoming. McKinney made a contract with M. M. Gillespie in their behalf, whereby the latter agreed to carry the mail over said route for the consideration of $700 quarterly payments for his services. The said mail contract with the government was made in the name of McKinney and the quarterly vouchers issued by the government were issued to McKinney, which were turned over by him to defendants, Hansberger and Crenshaw, who cashed them under a power of attorney from McKinney.

Before assuming his duties under his contract, M. M. Gillespie was introduced by Beedy's codefendants to Beedy, who as agent for his daughter, Nellie A. Beedy, had money to lend. He borrowed from defendant Beedy $900, to secure the payment of which he executed a chattel mortgage upon certain personal property which he used in connection with the business of carrying the mail and a mortgage upon some real estate situate in Kansas City.

In March, 1904, on account of domestic troubles, M. M. Gillespie ceased to carry the mails and his wife, the plaintiff herein, undertook the service under a contract similar to that of her husband. When he left the service he assigned to her a portion of one quarter's pay then due, but which Hansberger and Crenshaw refused to pay on the ground that they had been compelled to pay it to her husband. Plaintiff complied with her contract in carrying mail, but, not having been paid there-

for, she instituted this action against all three of the defendants as partners. The only question raised on the appeal is whether the defendant Beedy is a partner with Hansberger and Crenshaw.

Hansberger, Crenshaw and Beedy all testified that the latter was not a partner and it must be admitted there is no positive evidence that he was such.

The contract between McKinney and M. M. Gillespie contained a proviso that the former was to deposit with Barber & Barber of Kansas City a check for the sum of $600 as security for payment to Gillespie of each 'quarterly payment when the money should be received from the government. The contract contains also the following, "There are certain notes given to N. A. Beedy of different amounts in the total amount $900, which are secured on real estate owned by the party of the second part. Said notes are payable at different intervals and whenever the note due on any quarter during this agreement it shall be deducted with the interest thereon from the amount of pay due the party of the second part for the quarter," etc. It was shown that Beedy and Gillespie, after the contract had been entered into, talked together in reference to it and then went into the office of Barber & Barber and deposited it with them for safe keeping. Beedy testified that he had no knowledge of the contents of said contract. This may be true, but it does not seem reasonable that McKinney would have made such provision in his favor without his knowledge and consent.

In addition to said recitations, plaintiff relies upon certan letters she received from Beedy in answer to letters she wrote to him about the business. One dated March 3, 1904, if it be construed by detaching certain expressions from the context, might be considered as evidence tending to show that he was holding himself out as a partner in the business, but, if construed as a whole, it does not indicate such an intention. He tells plaintiff plainly that he has no right to say what shall be done with the route "and that the loan on the prop-

erty and the advance on your mail pay was a private matter of mine, which I suppose you are aware of." Other letters introduced, read in connection with the fact that he had lent the money of his daughter to M. M. Gillespie to enable him to purchase an outfit to carry the mail, account for the interest defendant manifested in plaintiff's undertaking to carry out the original contract made by her husband. The evidence as a whole is to the effect that plaintiff merely stepped into the shoes of the husband to complete his contract for carrying the mail and that she had no contract with Beedy to that effect. And the only reasonable inference to be drawn from the evidence is that whatever defendant Beedy did or said was of an advisory character so far as the plaintiff was concerned and with a view to his own individual interest or that of his daughter.

Beedy, apparently, belonged merely to that class of persons with abundant means who may be found connected more or less with the business affairs of persons who are in need of money and are willing to pay a good rate of interest to secure it. This view of the case accounts for his action in the premises. We are satisfied that there was no evidence whatever that he was a partner of his codefendants and that there was no substantial evidence that he held himself out to the plaintiff as such, but that, on the contrary, he notified plaintiff in plain terms that he had no authority to act for his codefendants.

Reversed. All concur.